UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FRANK BUTSELAAR,<br><br>                 Defendant. | 22 Cr. 560 (CS) |

**THE GOVERNMENT'S OPPOSITION TO
THE DEFENDANT'S MOTION TO DISMISS**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Shiva H. Logarajah
David A. Markewitz
Assistant United States Attorneys
    *Of Counsel*

## **<u>Table of Contents</u>**

Introduction ................................................................................................................. 1

Background ................................................................................................................. 2

Legal Standard ........................................................................................................... 4

Discussion .................................................................................................................. 6

I.      The Indictment Identifies the Legal Duty that Butselaar Violated. ................................... 7

II.      The Indictment Alleges that Butselaar Acted Willfully .................................................. 12

III.      The Government Met With Butselaar And His Counsel And Provided Witness Statements Well In Advance of Trial ................................................................. 13

Conclusion ............................................................................................................... 17

# **Table of Authorities**

**Pages**

## Cases

*Cordes v. Comm'r*, T.C. Memo. 2002-124, 2002 WL 1023173 (Tax Ct. 2002) ......................... 11

*Costello v. United States*, 350 U.S. 359 (1956) ............................................................... 3

*DeMartino v. Comm'r*, 862 F.2d 400 (2d Cir. 1988) ......................................................... 10

*Eisner v. Macomber*, 252 U.S. 189 (1920) ....................................................................... 9

*Garlock Inc. v. Comm'r*, 489 F.2d 197 (2d Cir. 1973) ...................................................... 14

*Hamling v. United States*, 418 U.S. 87 (1974) ................................................................... 5

*Moore v. United States*, 144 S. Ct. 1680 (2024) ............................................................... 14

*SEC v. Ahmed*, 72 F.4th 379 (2d Cir. 2023) ...................................................................... 9

*SEC v. Wyly*, 56 F. Supp. 3d 394 (S.D.N.Y. 2014) ....................................................... 13, 14

*United States v. Alfonso*, 143 F.3d 772 (2d Cir. 1998) ...................................................... 5

*United States v. Atkins*, 661 F. Supp. 491 (S.D.N.Y. 1987) ............................................. 9, 10

*United States v. Basye*, 410 U.S. 441 (1973) ............................................................. 1, 6, 7

*United States v. Benjamin*, 95 F.4th 60 (2d Cir. 2024) ...................................................... 4

*United States v. Broward*, 594 F.2d 345 (2d Cir. 1979) ..................................................... 4

*United States v. Buck*, No. 13 Cr. 282 (VM), 2017 WL 4174931 (S.D.N.Y. Aug. 28, 2017)........ 4

*United States v. Daugerdas*, 759 F. Supp. 2d 461 (S.D.N.Y. 2010), *aff'd*, 837 F.3d 212 (2d Cir. 2016) ...................................................................................................................... 10

*United States v. Dawkins*, 999 F.3d 767 (2d Cir. 2021) ................................................. 5, 11, 12

*United States v. De La Pava*, 268 F.3d 157 (2d Cir. 2001) ................................................ 4

*United States v. Goldberg*, 756 F.2d 949 (2d Cir. 1985) .................................................... 4

*United States v. Juwa*, 508 F.3d 694 (2d Cir. 2007) ...................................................... 5, 15

*United States v. Lemay*, No. 21-cr-573 (MKV), 2022 WL 17363595 (S.D.N.Y. Dec. 1, 2022).. 10

*United States v. Nassar*, No. 13 Civ. 8174 (ER), 2014 WL 5822677 (S.D.N.Y. Nov. 10, 2014).. 9

*United States v. Neumann*, No. 21 Cr. 439 (NSR), 2022 WL 3445820 (S.D.N.Y. Aug. 17, 2022) ....................................................................................................................... 16

*United States v. Orsini*, No. 23 Cr. 402 (PMH), 2024 WL 218445 (S.D.N.Y. Jan. 19, 2024)..... 12

*United States v. Percoco*, No. 16-CR-776 (VEC), 2017 WL 6314146 (S.D.N.Y. Dec. 11, 2017) ....................................................................................................................... 12

*United States v. Perez*, 575 F.3d 164 (2d Cir. 2009) ........................................................ 5

*United States v. Phillips*, 690 F. Supp. 3d 268 (S.D.N.Y. 2023).......................................... 11

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000).................................................... 7, 8, 11

*United States v. Raniere*, 384 F. Supp. 3d 282 (E.D.N.Y. 2019) ........................................ 11

*United States v. Rankin*, 422 F. Supp. 3d 564 (D. Conn. 2019) .......................................... 11

*United States v. Reed*, No. 20-cr-500 (JGK), 2022 WL 597180 (S.D.N.Y. Feb. 28, 2022)......... 12

*United States v. Sabbeth*, 262 F.3d 207 (2d Cir. 2001) ..................................................... 4

*United States v. Shun*, No. 16-CR-75 (RJA), 2021 WL 3710542 (W.D.N.Y. Aug. 20, 2021) .... 12

*United States v. Snyder*, 233 F. Supp. 2d 293 (D. Conn. 2002)........................................... 9

*United States v. Stavroulakis*, 952 F.2d 686 (2d Cir. 1992) .............................................. 4

*United States v. Stringer*, 730 F.3d 120 (2d Cir. 2013) ............................................................ 4, 5

*United States v. Sun Myung Moon*, 532 F. Supp. 1360 (S.D.N.Y. 1982) ...................................... 8

*United States v. Thompson*, 141 F. Supp. 3d 188 (E.D.N.Y. 2015), *aff'd* 896 F.3d 155 (2d Cir. 2018) .......................................................................................................................................... 7, 8

*United States v. Trupin*, No. 97 Cr. 97 (LMM), 1998 WL 23228 (S.D.N.Y. Jan. 14, 1998) ....... 10

*United States v. Turkish*, 458 F. Supp. 874 (S.D.N.Y. 1978) ...................................................... 10

*United States v. Vilar*, 729 F.3d 62 (2d Cir. 2013) ...................................................................... 4

*United States v. Wahab*, No. 21-CR-603 (VEC), 2022 WL 17581560 (S.D.N.Y. Dec. 12, 2022) ............................................................................................................................................ 13

*United States v. Walters*, 910 F.3d 11 (2d Cir. 2018) ................................................................... 5

*United States v. Williams*, 504 U.S. 36 (1992) ............................................................................. 5

*United States v. Willner*, No. 07 Cr. 183 (GEL), 2007 WL 2963711 (S.D.N.Y. Oct. 11, 2007) ... 9

*United States v. Yannotti*, 541 F.3d 112 (2d Cir. 2008) ........................................................... 4, 5

## Statutes

26 U.S.C. § 318 .......................................................................................................................... 15

26 U.S.C. § 61 .............................................................................................................................. 5

26 U.S.C. § 674 .......................................................................................................................... 14

26 U.S.C. § 677 .......................................................................................................................... 14

26 U.S.C. § 679 .......................................................................................................................... 14

26 U.S.C. § 951 .......................................................................................................................... 14

26 U.S.C. § 957 .......................................................................................................................... 14

26 U.S.C. § 958 .......................................................................................................................... 15

## Rules

Fed. R. Crim. P. 7 ........................................................................................................................ 4

## INTRODUCTION

This case concerns the fraudulent concealment of income for ultra-high net worth U.S. resident taxpayers. A U.S. resident taxpayer must report and pay taxes to the Internal Revenue Service on the money he or she earns, and may not evade that obligation by assigning that income to someone (or something) else, particularly when the taxpayer retains beneficial ownership and control over that income and the entities where it is collected. This is one of the "first principle[s] of income taxation." *United States v. Basye*, 410 U.S. 441, 449 (1973). And that first principle is the legal duty that the indictment in this case (the "Indictment") alleges that Frank Butselaar violated.

Butselaar argues otherwise, asserting that the Indictment must be dismissed because it (i) "fails to describe with particularity the legal duty that was allegedly violated by Mr. Butselaar," (Def. Memo. of Law ("MTD") at 12–21)[1]; and (ii) "fails to allege that Mr. Butselaar was aware of the tax provisions that were allegedly violated," (MTD at 22–23). Butselaar is mistaken.

*First*, the Indictment repeatedly identifies the legal duty that Butselaar violated and the critical background facts surrounding that duty, sufficiently detailing the ways in which Bustelaar failed to report to the IRS income that his clients generated, owned, and controlled. *See infra* Discussion § I. Butselaar's arguments to the contrary all reduce to the (incorrect) assertion that the Indictment must include lengthy and highly detailed factual allegations describing the particulars of how Butselaar committed his crimes. While such detailed allegations are not required, the Indictment in fact goes beyond what is obligated and supplies Butselaar with some of the very details he seeks.

---

[1] Pin cites to Butselaar's memorandum of law correspond to the ECF stamping page numbers and not the memorandum's internal pagination.

*Second*, the Indictment not only identifies the duty that was violated, but also expressly alleges that Butselaar "knowingly and willfully" violated that duty. *See infra* Discussion § II.

*Third*, Butselaar has clear insight into the Government's case. Beyond the voluminous Rule 16 discovery that he received, the Government met with and provided a summary of the evidence to Butselaar and his counsel, and the Government also produced witness statements early. Butselaar's claims of unfairness are entirely without merit. *See infra* Discussion § III.

Butselaar's motion should be denied in its entirety.

## **BACKGROUND**

Frank Butelsaar is a Dutch tax advisor who spent the better part of a decade knowingly and willfully helping to hide from the Internal Revenue Service tens of millions of dollars of his clients' ex-U.S. income. (Indictment ("Ind.") ¶¶ 1, 2, 7.) But eventually, Butselaar was caught. In October 2022, a grand jury issued an Indictment charging Butselaar with six criminal counts: a *Klein* conspiracy running from in or about 2012 until in or about 2018, in violation of 18 U.S.C. § 371, and five false subscription counts for aiding or assisting in the preparation of false or fraudulent individual income tax returns for his clients for tax years 2013 through 2017, in violation of 26 U.S.C. § 7206(2). (Ind. ¶¶ 8–20.)

Butselaar's client base included several internationally renowned disc jockeys ("DJs"). (Ind. ¶ 2.) Those DJs "generated" millions of dollars of worldwide income through musical performances and other work, which was then "collected in offshore entities." (Ind. ¶ 4.) "[A]t all relevant times," Butselaar knew that those DJs "beneficially owned and effectively controlled" those entities. (*Id.*) Those entities were, in turn, held by trusts that the DJs "established on the advice of Butselaar and others." (*Id.*)

2

Once the DJs became U.S. resident taxpayers, Butselaar worked to defraud the IRS and evade taxes on the DJs' worldwide income through a scheme designed to "conceal and disguise the DJ[s'] ownership and control" of the foreign entities and this money. (Ind. ¶ 5.) Specifically, while the DJs had, up to this point, been beneficiaries of the trusts that owned the offshore enti-ties—meaning that their connection to their income held in the offshore entities was indisputable and on the face of the trust documents—Butselaar nominally "remov[ed]" them from that role "during the time that the DJ[s] qualified as U.S. taxpayers," and "install[ed] nominee beneficiar-ies" in their place. (*Id.*)[2] Butselaar then counseled his DJ clients not to report to the IRS their offshore structures—including the income that the DJ clients earned and stored in those struc-tures—as required by law. (*Id.*) In simple terms, then, Butselaar hid income from the IRS through an ineffectual and unlawful assignment.  His clients retained control—and expected to benefit from—the income they generated and collected in their trusts, and Butselaar used the fig leaf of a nominee beneficiary to conceal this income from the IRS.

Butselaar engaged in similar conduct involving other clients of his who worked in the fash-ion industry (the "Fashion Industry Clients"). (Ind. ¶ 6.) Specifically, those Fashion Industry Cli-ents earned income through various overseas companies that they owned. (*Id.*) In order to avoid reporting that income to the IRS, Butselaar had the Fashion Industry Clients "fraudulent[ly] trans-fer[]" their overseas companies "to family members," despite Butselaar knowing that his clients would "maintain beneficial ownership of the overseas companies and the income earned there-from." (*Id.*)

---

[2] At trial, the Government intends to prove that Butselaar understood that changing the beneficiary had no effect on whether the trusts were reportable in the United States.

## LEGAL STANDARD

The law is well settled that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). So "[t]he dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001). A court should be particularly hesitant to impose such a severe sanction "where serious criminal conduct is involved." *United States v. Broward*, 594 F.2d 345, 351 (2d Cir. 1979).

When considering a motion to dismiss, the Court must take the allegations in the indictment as true. *See United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985). In addition, "[a]n indictment must be read to include facts which are necessarily implied by the specific allegations made." *United States v. Buck*, No. 13 Cr. 0282 (VM), 2017 WL 4174931, at *5 (S.D.N.Y. Aug. 28, 2017) (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992)). In that same vein, "common sense and reason prevail over technicalities." *United States v. Sabbeth*, 262 F.3d 207, 218 (2d Cir. 2001); *see also United States v. Benjamin*, 95 F.4th 60, 66 (2d Cir. 2024) ("'An indictment . . . need not be perfect, and common sense and reason are more important than technicalities.'" (quoting *De La Pava*, 268 F.3d at 162)).

"Pursuant to Federal Rule of Criminal Procedure 7, '[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *United States v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013) (alteration in original) (quoting Fed. R. Crim. P. 7(c)(1)). To satisfy this rule, "'an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" Un*ited States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (quoting *United States v.*

4

*Alfonso*, 143 F.3d 772, 776 (2d Cir.1998)). Only in "very rare cases," such as those involving a refusal to answer questions before Congress, must an indictment specify "how a particular element of a criminal charge will be met." *United States v. Stringer*, 730 F.3d 120, 125–26 (2d Cir. 2013) (discussing the special case of *Russell v. United States*, 369 U.S. 749 (1962)). Otherwise, "[a]n indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *Stringer*, 730 F.3d at 124 (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also Yannotti*, 541 F.3d at 127.

Where a defendant has been given sufficient notice of the charges against him by means of, for example, a criminal complaint or discovery, prejudice will not have been shown, and the indictment should stand. *See, e.g.*, *Stringer*, 730 F.3d at 124–25; *Yannotti*, 541 F.3d at 127. More-over, it is well settled that, "[u]nless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial," a facially valid indictment is not subject to challenge based on the quality or quantity of evidence. *Alfonso*, 143 F.3d at 776; *see also United States v. Williams*, 504 U.S. 36, 54 (1992); *United States v. Perez*, 575 F.3d 164, 166 (2d Cir. 2009). This rule exists because indictments are "not meant to serve an evidentiary function," but rather to "acquaint the defendant with the specific crime with which he is charged, allow him to prepare his defense, and protect him from double jeopardy." *United States v. Juwa*, 508 F.3d 694, 701 (2d Cir. 2007) (internal quotation marks and citation omitted). Accordingly, "[a]t the indictment stage, [courts] do not evaluate the adequacy of the facts to satisfy the elements of the charged offense." *United States v. Dawkins*, 999 F.3d 767, 780 (2d Cir. 2021) (alteration in original) (internal quota-tion marks omitted). Rather, "'[t]hat is something [courts] do after trial.'" *Id*. (internal quotation

marks omitted). This is consistent with the well-established principle that summary judgment pro-
ceedings "'do[] not exist in federal criminal procedure.'" *Id*. (internal quotation marks omitted).

    In short, dismissal of an indictment is a "'drastic remedy' that should be utilized with
caution and only in extreme cases." *United States v. Walters*, 910 F.3d 11, 26 (2d Cir. 2018).

## DISCUSSION

    A U.S. resident taxpayer must report to the IRS all the income she earns, no matter its
source. *See* 26 U.S.C. § 61 (stating that "gross income means all income from whatever source
derived"). That is one of the—if not *the*—most basic legal duties applicable to U.S. tax filings.
And just as elemental is the principle that "income must be taxed to him who earns it." *Basye*, 410
U.S. at 449 (internal quotation marks omitted).

    That is precisely the duty that Butselaar willfully violated. (Ind. ¶ 3.) Although Butselaar
asserts that the Indictment fails to identify this legal duty, what his motion describes is something
else entirely. Butselaar's various arguments all boil down to the assertion that the Indictment fails
to supply sufficient factual allegations to describe the particulars of *how* Butselaar violated this
duty. But the Indictment need not include such allegations to be sufficient.  And, in any case, the
Indictment does supply such allegations. (Ind. ¶¶ 5–6 (describing "fraudulent transfers" and "nom-
inee beneficiaries" as means of concealing income)). What is more, the Government has supplied
such details to Butselaar and his counsel in the context of a reverse proffer.[3] For these reasons,
Butselaar's motion—and his complaints of unfairness—fail.

---

[3] This was not (and was not represented to be) a complete, exhaustive proffer of all the evidence
that the Government intends to present at trial.

I.      **The Indictment Identifies the Legal Duty that Butselaar Violated.**

The Indictment spells out exactly what legal duty Butselaar violated: he failed to report to the IRS income that his clients generated, owned, and controlled.

Butselaar's U.S. tax resident clients had a duty "to report their worldwide income, including all income earned from foreign sources, and to pay the taxes due on that income." (Ind. ¶ 3.) Butselaar violated that duty by working "to conceal from the IRS . . . the existence of millions of dollars of worldwide income generated" by those clients. (Ind. ¶ 4; *see also* Ind. ¶¶ 8, 9 (alleging that the object of the charged conspiracy was "impeding, impairing, obstructing, and defeating the lawful governmental functions of the IRS in the ascertainment, computation, assessment, and collection of revenue, to wit, federal income taxes")) The Indictment provided further detail that not only did Butselaar's clients generate this income, but, "at all relevant times," they also "beneficially owned and effectively controlled" the offshore entities where that money was collected—that is, his clients generated, owned, and controlled the income. (Ind. ¶ 4.)

In those circumstances, the law is clear that this income must be reported to the IRS. *See Basye*, 410 U.S. at 449 ("[I]ncome must be taxed to him who earns it"(internal quotation marks omitted)). The Indictment therefore specifies precisely the legal duty that Butselaar violated.

In asserting otherwise, Butselaar makes several interrelated arguments, none of which is supported by caselaw or the Indictment.

*First*, Butselaar suggests that the Government was required—but failed—to expressly cite "the IRS rule that was allegedly violated . . . in the indictment." (MTD at 12.)  To start, the Indictment does just that by stating that "U.S. citizens and residents who had income in any one calendar year in excess of a threshold amount ('U.S. taxpayers') were required to file a U.S. Individual Income Tax Return, Form 1040 ('tax return').  On that tax return, U.S. taxpayers were obligated

to report their worldwide income, including all income earned from foreign sources, and to pay the taxes due on that income."  (Ind. ¶ 3).  But, regardless, no such pleading requirement exists.

True, "where an indictment charges a crime that depends in turn on the violation of another statute, the indictment must identify the underlying offense." *United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000). But that does not mean, as Butselaar suggests, that the Indictment must contain citations to provisions of the Internal Revenue Code. The Indictment merely "must show what other law was violated, *either* by citation to the other statute *or* by sufficient factual allegations." *United States v. Thompson*, 141 F. Supp. 3d 188, 195 (E.D.N.Y. 2015), *aff'd* 896 F.3d 155 (2d Cir. 2018) (emphasis added). And those factual allegations need not be lengthy or detailed to be "sufficient"—the use of a particular word or phrase alone can be enough. *See, e.g.*, *id.* at 197 (reasoning that the phrase "prostitution" was alone sufficient to identify the underlying violation).

This very rule was applied in a case on which Butselaar himself relies: *United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000). In *Pirro*, the defendant was charged with, among other crimes, failing to report a board member's ownership interest in an S Corporation's tax return. *Id.* at 87–89. The Second Circuit affirmed the dismissal of the indictment for failing to allege adequately the underlying legal duty that was violated. *Id.* at 93. The panel premised its holding on the fact that the indictment alleged that the defendant failed to report an "ownership interest" in the company, since there was no well understood legal duty to declare an unspecified "ownership interest." *See id.* at 90. But the panel suggested that the indictment would have been permissible had it used more specific language—that the board member was a "beneficial owner or a de facto shareholder" of the company—without any indication that this language had to be coupled with a citation to a Code provision governing "beneficial" or "de facto" ownership. *Id.* at 91. In other words, a simple

change in terminology alone was all that would have been required to identify the underlying legal duty that had been violated.

The decision in *United States v. Sun Myung Moon* is also instructive. 532 F. Supp. 1360 (S.D.N.Y. 1982). There, the defendant moved to dismiss the indictment, arguing that it was invalid because it alleged only that the defendant had failed to disclose to the IRS certain bank accounts over which he had "dominion and control" and stock that had been "issued" to him. *Id.* at 1364. But in a superseding indictment, the Government clarified that the defendant "owned" both the bank accounts and the stock. *Id.* That mere change in phrasing was sufficient to render the tax counts "valid on their face." *Id.*

*Second*, and relatedly, Butselaar asserts that the Indictment lacks "sufficient factual details to explain, 'with particularity,' why the IRS rule that the Government claims to have been violated applied to the income at issue." (MTD at 13 (emphasis omitted)).  But, once again, the Indictment does exactly that. By alleging the use of "nominee beneficiaries during the time [Butselaar's DJ clients] qualified as U.S. taxpayers" and "fraudulent transfers" of "overseas companies to family members" for other clients while those clients "maintain[ed] beneficial ownership" (Ind. ¶¶ 5–6), the Indictment describes exactly how Butselaar's clients were connected to the income at issue and how Butselaar concealed that income from the IRS.[4] Put differently, the Indictment alleges

---

[4] Butselaar's argument that the phrase "nominee beneficiary" does not appear in a search of caselaw (MTD at 17–20) is a red herring. What matters—and what the Indictment alleges in express terms—is that Butselaar's clients controlled the trust corpus (Ind. ¶ 4), but were not listed as trust beneficiaries during their time as U.S. taxpaying residents (*id.* ¶ 5), which was intentionally done to disguise the clients' control over their income (*id.*). And in any event, the meaning of the phrase is clear. The term "nominee" is broadly understood to mean a third party who holds the legal title to something while the taxpayer enjoys the use and benefit of that thing. *See SEC v. Ahmed*, 72 F.4th 379, 408 (2d Cir. 2023); *United States v. Nassar*, No. 13 Civ. 8174 (ER), 2014 WL 5822677, at *4–5 (S.D.N.Y. Nov. 10, 2014); *United States v. Snyder*, 233 F. Supp. 2d 293, 296 (D. Conn. 2002). So a "nominee beneficiary" is clearly a third party who is a beneficiary of a trust in name only, while the taxpayer (Butselaar's client) is the true beneficiary.

"transactions" that "were sham, false, contrived and created by various manufactured acts all for the purpose of defeating the payment of proper income taxes." *United States v. Atkins*, 661 F. Supp. 491, 496 (S.D.N.Y. 1987). And it is without question that "what is and is not income . . . must be determined 'according to truth and substance, without regard to form.'" *United States v. Willner*, No. 07 Cr. 183 (GEL), 2007 WL 2963711, at *7 (S.D.N.Y. Oct. 11, 2007) (quoting *Eisner v. Macomber*, 252 U.S. 189, 206 (1920)).

Thus, this argument—and, quite frankly, the entirety of Butselaar's motion—should be rejected because the Indictment properly alleges that income was concealed from the IRS by violating a "basic rule of law," which is that "taxation is based upon substance, not form." *DeMartino v. Comm'r*, 862 F.2d 400, 406 (2d Cir. 1988). And where indictments make such allegations, courts in this Circuit have repeatedly rejected motions to dismiss in tax cases. *See, e.g.*, *United States v. Lemay*, No. 21-cr-573 (MKV), 2022 WL 17363595, at *4 (S.D.N.Y. Dec. 1, 2022) (rejecting motion to dismiss an indictment which alleged the use of "sham companies which purported to employ laborers who, in fact, worked at the direction and under the control of Company-1"); *United States v. Daugerdas*, 759 F. Supp. 2d 461, 467 (S.D.N.Y. 2010), *aff'd*, 837 F.3d 212 (2d Cir. 2016) (refusing to dismiss an indictment which was based on "economic substance doctrine" which the Court found to be a "duty" that was "well-established"); *United States v. Trupin*, No. 97 Cr. 97 (LMM), 1998 WL 23228, at *2 (S.D.N.Y. Jan. 14, 1998) (rejecting motion to dismiss an indictment where "assets . . . are alleged either explicitly or implicitly to have been those of the defendant, even if held by nominees or *alter ego* entities"); *Atkins*, 661 F. Supp. at 496 (rejecting motion to dismiss an indictment where it alleged "the transactions referred to were sham, false, contrived and created by various manufactured acts all for the purpose of defeating the payment of proper income taxes"); *United States v. Turkish*, 458 F. Supp. 874, 886 (S.D.N.Y. 1978) (rejecting motion

to dismiss a count under 18 U.S.C. § 371 where the indictment alleged, among other things, the use of "sham tax deductions").[5]

*Third*, Butselaar suggests that the Indictment's use of the phrase "beneficially owned" is problematic as that phrase is "used in multiple and differing contexts" and is too "generic" to apprise him of the legal duty he violated. (MTD at 13–14.)  Butselaar then goes on to theorize several possible arguments the Government could advance for why his clients were beneficial owners of the unreported income, and possible defenses Butselaar may raise in return. (MTD at 14–17.)

As an initial matter, Butselaar's own precedent again undermines his argument. In *Pirro*, the Second Circuit identified the phrase "beneficial owner" as the precise sort of allegation that would have made clear the source of the defendant's legal duty to report certain items in a tax return. *See* 212 F.3d at 91.  *Pirro* is not alone in that conclusion; the concept of beneficial ownership of income or assets is well-understood in the tax context. *See, e.g., Cordes v. Comm'r*, T.C. Memo. 2002-124, 2002 WL 1023173, at *10 (Tax Ct. 2002) ("Beneficial ownership is marked by command over property or enjoyment of its economic benefits. A taxpayer's total control over a corporation and use of corporate funds for personal reasons can result in constructive dividends, even though the taxpayer did not hold legal title to the corporation's stock at the time of the advances." (internal quotation marks and citations omitted)).

More broadly, Butselaar's arguments on this front ask this Court to do what the Circuit has already said is improper at the "indictment stage": to "evaluate the adequacy of the facts."  *Dawkins*, 999 F.3d at 780.  And if Butselaar believed he was entitled to more facts, "the proper remedy

---

[5] To the extent Butselaar's claim here is a need for a further proffer of the Government's evidence on fairness grounds, that claim should be rejected for the reasons set out below. *See, infra*, Discussion § III.

. . . is not for the indictment to be dismissed; it is for the defendant to request a bill of particulars." *United States v. Phillips*, 690 F. Supp. 3d 268, 277 (S.D.N.Y. 2023). Even if, however, his argument was styled as a request for a bill of particulars, Butselaar would not get the relief he seeks on this front. "A bill of particulars is not meant to enable a defendant to obtain a preview of the government's evidence before trial or to learn the legal theory upon which the government will proceed"—exactly what Butselaar seeks to extract with his motion to dismiss. *United States v. Raniere*, 384 F. Supp. 3d 282, 322 (E.D.N.Y. 2019) (internal modifications and quotation marks omitted).

Simply put, Butselaar "artfully frame[s]" his argument "as if challenging the sufficiency of the indictment." *United States v. Rankin*, 422 F. Supp. 3d 564, 578 (D. Conn. 2019). "[I]n reality," however, Butselaar "invite[s] the [Court] to decide if the prosecution can meet its evidentiary burden at trial." *Id.* That invitation should be rejected. *Dawkins*, 999 F.3d at 780 (noting that summary judgment proceedings "do[] not exist in federal criminal procedure").

## II.     The Indictment Alleges that Butselaar Acted Willfully

Butselaar admits, as he must, that the Indictment expressly (and repeatedly) alleges that he acted "willfully." (MTD at 22; *see also* Ind. ¶¶ 8–9, 12, 14, 16, 18, 20.) Nevertheless, he argues that these allegations are insufficient because the Indictment "is completely silent as to what 'legal duty' Mr. Butselaar 'willfully' violated." (MTD at 22.) Butselaar is mistaken for all the reasons described above.  And if his argument is to be construed as asking for further proof of willfulness, that should be rejected because "[t]he sufficiency of the Government's evidence of intent cannot be considered on a motion to dismiss the indictment." *United States v. Percoco*, No. 16-CR-776 (VEC), 2017 WL 6314146, at *7 (S.D.N.Y. Dec. 11, 2017); *see also United States v. Orsini*, No. 23 Cr. 402 (PMH), 2024 WL 218445 (S.D.N.Y. Jan. 19, 2024) (explaining that "[w]hether the

Government's evidence sufficiently establishes the requisite *mens rea* is not the proper subject of a pretrial motion to dismiss" (citation omitted)); *United States v. Reed*, No. 20-cr-500 (JGK), 2022 WL 597180, at *2 (S.D.N.Y. Feb. 28, 2022) (finding that where an indictment alleged "knowing[] and willful[]" violations there was a "sufficient basis to deny motion to dismiss the indictment"); *United States v. Shun*, No. 16-CR-75 (RJA), 2021 WL 3710542, at *3 (W.D.N.Y. Aug. 20, 2021) (finding that intent in a tax case was a "factual matter for the jury to decide").

### III.   The Government Met With Butselaar And His Counsel And Provided Witness Statements Well In Advance of Trial

"While a bill of particulars or discovery cannot save a 'defective indictment,' where the indictment has been found even minimally sufficient, a court may look to the record as a whole in determining whether the defendant is protected from double jeopardy in a subsequent prosecution and whether the defendant has had an adequate opportunity to prepare his defense." *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999) (internal citation omitted); *see also United States v. Wahab*, No. 21-CR-603 (VEC), 2022 WL 17581560, at *2 (S.D.N.Y. Dec. 12, 2022) (same).

As described above, the Indictment is "minimally sufficient" (and then some). The Court may therefore assess Butselaar's assertion that it is "nearly impossible" for him to "prepare a defense to the Government's allegations" (MTD at 6) in the context of the "record as a whole," *Walsh*, 194 F.3d at 45. In that context, Butselaar's arguments of unfairness ring particularly hollow. Government counsel has—without any legal obligation—provided presentations on its evidence to both Butselaar and his current counsel.  And, again without any legal obligation to do so, it has provided witness statements to Butselaar's counsel more than five months in advance of trial.

The presentations to both Butselaar and counsel contained significant details on Butselaar's awareness of specific IRS rules through his interactions with highly regarded tax professionals in

the United States.  At various points during the charged scheme, U.S. tax lawyers and other pro-
fessionals told Butselaar that his scheme was illegal because it violated various provisions of the
tax code that codified, in sum and substance, the substance-over-form doctrine with respect to
trusts (the Grantor Trust rules) and foreign corporations (the Subpart F rules).

*Grantor Trust*.  "A grantor trust is created when a person contributes cash or property to a
trust but retains certain interests such that he is treated as the owner of the trust"; that is, the grantor
contributes property over which he retains "substantially unfettered powers of disposition." *SEC
v. Wyly*, 56 F. Supp. 3d 394, 407–08 (S.D.N.Y. 2014) (internal citations omitted). This requires
looking beyond the trust's legal documents and examining "the economic realities," thereby taking
"substance over form."[6] *Id.* at 408–09. Examples of when a trust meets the definition of a grantor
trust are when (i) the grantor can affect the beneficial enjoyment of the trust's corpus, 26 U.S.C. §
674; (ii) the trust's corpus is "held or accumulated for future distribution to the grantor or the
grantor's spouse," 26 U.S.C. § 677(a)(2); or (iii) under certain conditions, the trust has a United
States beneficiary, 26 U.S.C. § 679(a)(1), (a)(4), (c)(1).

As shared with Butselaar and his counsel, Butselaar was told at least twice during the term
of the conspiracy that the trusts he set up for his DJ clients were grantor trusts.  First, on Decem-
ber 3, 2012, another accounting professional told Butselaar that the Trust he had set up for the DJ
clients were "[g]rantor trusts" which, in sum and substance, made Butselaar's structures taxable in
the United States for U.S. tax residents.  And second, on September 3, 2014, Butselaar was sent,
by a prominent U.S. law firm, a highlighted version of the applicable grantor trust laws. Butselaar

---

[6] A trust need not be a sham to be taxable as a grantor trust. *See Wyly*, 56 F. Supp. 3d at 410.

was also told by a shareholder of this law firm that the grantor trust for DJ Client-2 was reportable in the United States.

*Subpart F.*   "[S]ubpart F taxes American shareholders of American-controlled foreign corporations on several kinds of undistributed corporate income." *Moore v. United States*, 144 S. Ct. 1680, 1692 (2024). Subpart F of the Code requires a taxpayer to report a foreign corporation's income if that taxpayer holds "more than 50%" of the company's stock. 26 U.S.C. § 957.   It does not matter if that income has been distributed or not.   *See* 26 U.S.C. § 951(a)(1); *Garlock Inc. v. Comm'r*, 489 F.2d 197, 198 (2d Cir. 1973). IRS regulations implementing these rules explicitly bake in the substance-over-form doctrine by noting that "[a]ny arrangement to shift formal voting power away from United States shareholders of a foreign corporation will not be given effect if in reality voting power is retained."   26 C.F.R. § 1.957-1(b)(2). To further prevent abuses, the Code clarifies that this includes "constructive ownership of stock" as defined under section 318(a). 26 U.S.C. § 958(b). Section 318(a), in turn, states that a taxpayer is deemed to own stock that is "owned, directly or indirectly, by or for any portion of a trust of which [that taxpayer] is considered the owner" under the Code's grantor trust rules. 26 U.S.C. § 318(a)(2)(B)(ii). Accordingly, if the taxpayer owns a trust under the grantor trust provisions, then the taxpayer is also treated as owning any company that the trust itself owns.

As relayed to Butselaar and his counsel, another U.S. tax lawyer—different from the lawyer who relayed to Butselaar the conclusion about grantor trusts—orally told Butselaar that Subpart F would make the income earned by DJ Client-2 and collected in that client's trust structure taxable.[7] On February 4, 2014, that same lawyer also wrote out his conclusions in an email, which was forwarded to Butselaar a few weeks later.   Later, in June 2016, in the context of a Fashion

---

[7] There is evidence that, as early as 2012, Butselaar was aware of Subpart F.

Industry Client, Butselaar was told once again by yet another U.S. professional that Subpart F applies to foreign corporations that "receive[]" compensation for the U.S. resident client's "services."  That same professional went on to describe Butselaar's proposal to have the Fashion Industry Client transfer the shares of the company to a relative during times of U.S. tax residency as instituting "nominee ownership," which "would not avoid US reporting requirements."

Butselaar knows exactly what he has been charged with and why he has been charged in the United States. The Indictment, for the reasons described above, is more than sufficient "to acquaint [Butselaar] with the specific crime with which he is charged, allow him to prepare his defense, and protect him from double jeopardy." *Juwa*, 508 F.3d at 701 (internal quotation marks and citation omitted). And between the presentations, summarized above, and the provision of witness statements to Butselaar's counsel—in addition to voluminous Rule 16 discovery—it is also beyond question that, five months before trial, Butselaar "has had an adequate opportunity to prepare his defense." *Walsh*, 194 F.3d at 45 (citations omitted); *see also United States v. Neumann*, No. 21 Cr. 439 (NSR), 2022 WL 3445820, at *5 (S.D.N.Y. Aug. 17, 2022).

## **CONCLUSION**

For the foregoing reasons, the Court should deny in its entirety Frank Butselaar's motion to dismiss the Indictment.

Dated:         White Plains, New York
               July 2, 2024

                              Respectfully submitted,

                              DAMIAN WILLIAMS
                              United States Attorney
                              Southern District of New York


                     By: _____
                         s/_____
                         Shiva Logarajah
                         David A. Markewitz
                         Assistant United States Attorneys
                         Southern District of New York
                         (914) 993-1900