# UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
:
:
UNITED STATES OF AMERICA, :
:
v. :
: Case No. 22-cr-560 (CS)
FRANK BUTSELAAR, :
:
    Defendant. :
:
------------------------------------- x

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION
## <u>TO DISMISS THE INDICTMENT</u>

 

Kerry Lawrence
Law Office of Kerry Lawrence PLLC
140 Grand Street
Suite 705
White Plains, NY 10601
(914) 946-5900
<u>kerry@kerrylawrencelaw.com</u>

Diane Fischer
Law Office of Diane Fischer
421 Degraw Street
Brooklyn, New York 11217
(646) 872-3505
<u>diane@dianefischerlaw.com</u>

*Attorneys for Defendant Frank Butselaar*

**TABLE OF CONTENTS**

ARGUMENT .................................................................................................................................. 1

I.  THE GOVERNMENT WAS OBLIGATED TO DESCRIBE, WITH
    PARTICULARITY, THE LEGAL DUTY ALLEGEDLY VIOLATED BY
    MR. BUTSELAAR. ........................................................................................................... 1

II. THE INDICTMENT FAILS TO DESCRIBE, WITH PARTICULARITY, THE
    LEGAL DUTY ALLEGEDLY VIOLATED BY MR. BUTSELAAR. ............................. 2

CONCLUSION ............................................................................................................................... 9

Defendant Frank Butselaar respectfully submits this reply memorandum of law in further support of his motion to dismiss the Indictment.

## ARGUMENT

I. **The Government Was Obligated to Describe, With Particularity, the Legal Duty Allegedly Violated By Mr. Butselaar.**

The Government spends multiple pages of its Opposition arguing that its Indictment is legally sufficient because, in the Government's view, an "indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." Opp. at 4 (citing, among other sources, *United States v. Yannotti*, 541F.3d 112, 127 (2d Cir. 2008) and Fed. R. Crim. Pro. 7). The Government has missed the point. As the cases cited by the Government acknowledge, in many criminal cases, such as those alleging narcotics or firearms offenses, a brief indictment may very well pass Constitutional muster, because, in those cases, a statement of the offense, as well as the details of when and where it took place is enough to satisfy the Constitutional requirement that an indictment "sufficiently apprise the defendant of what he must be prepared to meet" at trial. *Russell v. United States*, 369 U.S. 749, 763 (1962) (describing the obligations of an indictment under the Fifth and Sixth Amendments). For example, if the defendant is accused of felony drug possession and the indictment describes that offense as occurring in Manhattan's Central Park on the 12th of November, the defendant likely understands the nature of the Government's case against him. If he wishes to prepare a defense, he knows that he must collect evidence demonstrating that he was not in Central Park, on November 12, with a federally-controlled substance.

Federal tax cases, however, involve "one of the most esoteric areas of the law," where the underlying statutes and regulations are "replete with full-grown intricacies," *see United States v. Regan*, 937 F.2d 823, 827 (2d Cir. 1991), and it is for that reason that the Second Circuit has

1

made clear that where the Government has brought an indictment for violation of the tax code, the Government *must* "identify the underlying offense" *and* include in the indictment sufficient factual details to explain, "with particularity," why the IRS rule that the Government claims to have been violated applied to the monies at issue. *United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000) (an indictment must set forth sufficient "background facts" that "give rise to the duty" to report the income that was "omi[tted.]").[1] While the Government contends, based on *United States v. Stringer*, that it is a "rare case[]" that requires an indictment to specify "how a particular element of a criminal charge will be met," *see* Opp. at 5, it neglects to mention that *Stringer* itself identifies cases alleging "false tax return(s)" as precisely the type of "rare" case that requires the Government to identify, in the indictment, what "statements [in the tax return] are false," and to explain "in what respect they are false." *See Stringer*, 730 F.3d 120, 127 (2d Cir. 2013).

## II. The Indictment Fails to Describe, With Particularity, the Legal Duty Allegedly Violated By Mr. Butselaar.

Although the Government disagrees that it was *obligated* to "identify the underlying offense" and include in the indictment sufficient factual details to explain, "with particularity," why the IRS rule that the Government claims to have been violated applied to the monies at

---

[1] The Government incorrectly claims that Mr. Butselaar is asking this Court to improperly "evaluate the adequacy of the facts" and the Government cites *United States v. Dawkins*, 999 F.3d. 767 (2d. Cir. 2021), for the proposition that such a task is inappropriate at the motion to dismiss stage. Opp. at 11. The Government is wrong. This Court *is* required to decide whether "the facts alleged" are "sufficient in law to withstand a motion to dismiss the indictment," which means that the Court must assume that the factual allegations are true and then determine, whether assuming the truth of the facts alleged, the Government has sufficiently detailed the violation of a "legal duty" established under the tax law. *Dawkins* did not disturb this long-standing judicial obligation; rather, in that case, the defendant asked the court to "weigh" the facts, rather than assuming their truth, on a motion to dismiss. This, of course, is not appropriate, pre-trial.

issue, *see Pirro*, 212 F.3d at 93-94, the Government argues that its Indictment nevertheless satisfies these requirements. According to the Government, the Indictment is sufficient because it states, at paragraph 3, that "U.S. taxpayers [are] obligated to report their worldwide income, including all income earned from foreign sources, and to pay the taxes due on that income." *See* Opp. at 6 (arguing that the inclusion of this paragraph was the equivalent of citing to 26 U.S.C. § 61). The Government is wrong. If the only thing that the Government needed to do in a tax fraud case to survive a motion to dismiss was to cite the general duty that U.S. residents are obligated to "pay taxes" on "income," there would not be decades of legal precedents in which district and appellate courts alike have dismissed tax fraud indictments for failing to identify a code provision that required reporting of the specific monies at issue. That is because, even accepting the duties imposed by 26 U.S.C. § 61, the question of whether certain funds are "income" is itself a legal allegation, based on specific tax provisions, *not* a factual assertion that the Court assumes to be true on a motion to dismiss. *See United States v. Harris*, 942 F.2d 1125, 1128, 1131 (7th Cir. 1991) (explaining that the question of whether certain monies are "income" under 26 U.S.C. § 61 depends on other provisions of the tax code which define what does and does not constitute reportable "income").

As the Government concedes, in Part III of its Opposition, the Indictment here concerns the taxability of funds generated by foreign corporations—the "loan-out" companies described as the "Foreign Corporations" in our Opening Brief. *See* Opp. at 4-6. While the Indictment summarily alleges, in Paragraph 5, that the tax returns of the DJ Clients did not report the "income" of the Foreign Corporations, it is entirely silent as to the legal basis that undergirds its assumption that the revenue earned by these Corporations constituted "income" reportable on the U.S. tax returns of the DJ Clients. Nor is this an obvious point. To the contrary, generally

3

speaking, revenue earned by a corporation is taxable to that corporation; it is *not* "income" attributable to the corporation's owners or employees, except in certain, rare circumstances. *See* Mertens Law of Federal Income Taxation § 38:12 (Mar. 2024 update) ("Absent extraordinary circumstances a corporation's business is not attributable to its shareholders for tax purposes.")

The Government attempts to defend the lack of any legal citation to the IRS Code by arguing that the Indictment *does* contain an allegation that the Foreign Corporations were "beneficially owned" by the DJ Clients. See Opp. at 9-11 (citing Ind. at ¶ 4). But there is no provision in the Internal Revenue Code, as it existed between 2012 and 2017, that speaks to how funds generated by a foreign corporation that is "beneficially owned" by a U.S. resident should be reported. The Code *does* contain provisions related to the revenue of "controlled foreign corporations" and provides that these may be "constructively owned," *see* 26 U.S.C. § 951(a), but the Code specifically defines such "constructive ownership" in the context of how the corporation's stock is held; it is not defined in the same way that the Government defines "beneficial ownership" in in its Opposition, where the Government uses a vague and amorphous definition, involving unspecified "command over property" and "enjoyment of economic benefits." *See* Opp. at 11.

While the Government defends its Indictment by claiming that the Second Circuit, in *Pirro*, blessed the use of the phrase "beneficial ownership" in a tax fraud indictment, and therefore no more particular description, matching the language of the Tax Code, is necessary, *see* Opp. at 11, the Government is incorrect. In *Pirro*, the district court dismissed certain counts of a tax fraud indictment after considering whether "de facto" share ownership—*i.e.*, beneficial ownership of shares—was reportable under Section 1361 through Section 1379 of the Code. *Pirro*, 96 F. Supp. 2d 279, 284 (S.D.N.Y. 1999). The district court concluded that even

4

assuming "de facto" share ownership existed, it did not fall within the Code's reporting requirements.  *Id*.  On appeal, the Government argued that the indictment's counts should not have been dismissed and asked the Second Circuit to consider whether "de facto" ownership was reportable under Code sections 1361-1379.  *Pirro*, 212 F.3d at 91.  The Second Circuit did *not* agree that the Code covered "de facto" ownership, nor did it state that if the Government had used that term (or its equivalent, beneficial ownership), the indictment would have been sufficient.  Instead, the Circuit stated that because the indictment did not use the terms "'de facto' ownership" or "beneficial ownership," but instead used the term "ownership interest," the Circuit's consideration of the sufficiency of the indictment would be limited to the actual phrase used in the indictment, that is, "ownership interest," which it concluded was *not* specific enough to make out a tax violation of Sections 1361-79, since those provisions did not require the reporting of general "ownership interests," but rather "share ownership."  *Id* at 94.

The same principle applies here:  while the Indictment uses the phrase "beneficial ownership," the Government does not and cannot cite any provision of the Tax Code that requires the reporting of income generated by a foreign corporation that is "beneficially owned."  The closest concept under the Tax Code is "constructive ownership" but, as described above, the Tax Code's definition of "constructive ownership" is different and narrower than the Government's definition of "beneficial ownership" and for that reason too, the Indictment's allegation are too generic to survive a motion to dismiss.  *Id.* at 93 (because the indictment's assertion of an "ownership interest" constituted a broader category of interests than the "share ownership" required to be reported under the Code, the indictment's phrasing was too "generic," did not appropriately "descend to particulars," and mandated the dismissal of the counts at issue).

5

Similarly, the Government has no good response to the fact that the primary wrongdoing that Mr. Butselaar is alleged to have engaged in—the "install[ation] [of] nominee beneficiaries" of the Foreign Trusts, *see* Ind. at ¶ 5 —is an allegation that appears, at least on the face of the Indictment, to have no significance at all under the Tax Code. In fact, as the Government concedes, *see* Opp. at 9, n.4, there is no such thing as a "nominee beneficiary." It is a term that the Government made up. The Government breezes past this point, arguing that even though "nominee beneficiary" is a term with *no* legal precedence, its meaning is easy enough to glean because "broadly" speaking, a "nominee" is a "third party who holds the legal title to something while the taxpayer enjoys the use and benefit of that thing." *See* Opp. at 9, n.4. This definition of "nominee," however, is not easily transferrable to a trust beneficiary, because beneficiary status, unlike the legal property at issue in the Government's nominee cases, is not an *asset*, in which the "thing['s]" "use" can be separated from its "ownership." Indeed, even it *was* theoretically possible to "use" beneficiary status for one's own benefit, while someone else actually held "title" to that status, there are no allegations in the Indictment alleging that such "use" occurred. Nowhere in the Indictment does the Government allege—nor could it—that in the years at issue the DJ Clients received trust distributions that were supposed to go the named beneficiaries, but instead were sent to the DJ Clients.

Even more problematic is the Indictment's failure to draw any connection between its allegations concerning these "nominee beneficiaries" and the tax laws. As described in our Opening Brief, the Indictment makes no attempt to describe how the alleged change to the beneficiaries of the Foreign Trusts impacted the DJ Clients' tax obligations. The tax obligation that the Government contends was sufficiently detailed in the Indictment—that is, the general obligation that "U.S. taxpayers [are] obligated to report their worldwide income, including all

6

income earned from foreign sources, and to pay the taxes due on that income," see Opp. at 6—offers no assistance on this question, because an individual's *status* as a trust "beneficiary" on its own, without any actual monetary distributions from the trust, is certainly not "income." *See* Bogert's The Law of Trusts and Trustees, Ch. 15 ("Trusts and Problems of Taxation"), § 268 (emphasis added) (the "general rule" for the taxation of a trust beneficiary is that he or she is liable for taxes on income actually "distributed" to him/her). No IRS provision is cited in the Indictment that would explain how the "installation" of "nominee beneficiaries" resulted in the omission of taxable income on the DJ Clients' 1040 tax returns.

The Government is certainly aware of this hole in its Indictment, as it spends the last third of its Opposition outlining for the Court a very complicated set of tax provisions that would need to apply in order for the alleged change in beneficiaries to have any impact on the DJ Clients' reportable "income." *See* Opp. at 13-17.[2] In short, the Government describes a scenario in which the revenue generated by the Foreign Corporations could have been reportable as "income" on the DJ Clients' U.S. tax returns, *if* the Foreign Corporations qualified as "controlled foreign corporations," as defined under the Code *and* were "constructively owned" by the DJ Clients, as that term is defined by the IRS. One way in which the IRS might find such "constructive ownership" would be if the "voting stock" of the Foreign Corporations were held in a foreign trust that constituted a "grantor trust" under Sections 671 through 679 of the Code

---

[2] The Government asserts that it is only describing these Code provisions in order to demonstrate what Mr. Butselaar could learn from "discovery" and to assure the Court that Mr. Butselaar "knows exactly what he has been charged with and why he has been charged in the United States." Opp. at 13, 15. In fact, given that the Government openly concedes that "discovery cannot save a defective indictment," *see id.*, it seems more likely that Part III of the Government's Opposition is included so that the Court could consider the Government's real theory of tax liability, which is otherwise not found within the Indictment itself.

7

*and* that trust was attributable to the DJ Clients. As the Government acknowledges, *see* Opp. at 14, there are various reasons why a particular trust might or might not constitute a "grantor trust," but one reason could be that the trust had a "U.S. beneficiary" in the tax year at issue. *Id*.

Thus, although this theory of tax liability is nowhere to be found in the Indictment, it appears that the Government's case is based on the premise that Mr. Butselaar removed the DJ Clients as beneficiaries of the Foreign Trusts, so that those Trusts would not constitute "grantor trusts" under Sections 671 through 679 of the Code. If the Foreign Trusts were not "grantor trusts," the stock of the Foreign Corporations, which the Foreign Trusts held, could not be deemed to be "constructively owned" by the DJ Clients. If the stock of the Foreign Corporations was not "owned," either directly or "constructively," by the DJ Clients, the revenue generated by the Foreign Corporations could not be deemed "income" reportable on the DJ Clients' US tax returns. Yet, and despite the fact that the Government was undoubtably attempting to assist the Court by reciting this detailed and precise set of Code provisions, the fact remains that *none* of these Code provisions are anywhere to be found within the Indictment's paragraphs.[3]

At bottom, the Government's Opposition fails to grapple with the fundamental flaw in its Indictment, a defect that both *Russell* and *Pirro* discuss at length: an indictment must contain sufficient particulars "to inform the court of the facts alleged" with enough detail to "enable the court to decide whether the facts alleged are sufficient *in law* to withstand a motion to dismiss the indictment." *Russell*, 369 U.S. at 768, n.15 (emphasis added); *Pirro*, 212 F.3d at 92. Or, to put it another way, an indictment must contain sufficient particularity for a district court, looking

---

[3] Because the Indictment fails to identify the "legal duty" that Mr. Butselaar alleged violated, it necessarily fails to allege that Mr. Butselaar was aware of that duty, even though "willfulness" is a required element under the criminal tax laws. For the reasons set forth in our Opening Brief, at Part II, the Indictment should be dismissed for this reason as well.

8

only at the indictment itself, to assess whether, assuming the truth of the factual allegations, there has been a violation of a "known legal duty." *See Pirro*, 96 F. Supp. 2d at 283; *Russell*, 369 U.S. at 768-69 (an indictment must provide enough details for a court, looking only at the indictment, to "intelligently" decide whether "the facts alleged are sufficient in law to withstand a motion to dismiss the indictment.")  The fact that the Government was required to spend the final third of its brief describing, in great detail, Code provisions found nowhere in the Indictment is strong evidence that the Government's Indictment lacks the specificity that is constitutionally required and fails to "sufficiently apprise[]" Mr. Butselaar of "what he must be prepared to meet." *Russell*, 369 U.S. at 768-69.  The Indictment must be dismissed.

## CONCLUSION

This Court should order the dismissal of the Indictment against Mr. Butselaar.

Dated:   New York, New York
         July 16, 2024

_____
Kerry A. Lawrence, Esq.


Kerry Lawrence, Esq.
Law Office of Kerry Lawrence PLLC
140 Grand Street, Suite 705
White Plains, NY 10601
(914) 946-5900
kerry@kerrylawrencelaw.com

Diane Fischer, Esq.
Law Office of Diane Fischer
421 Degraw Street
Brooklyn, New York 11217
(646) 872-3505
diane@dianefischerlaw.com

*Attorneys for Defendant Frank Butselaar*

9