

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

October 15, 2024

**BY ECF & EMAIL**
The Honorable Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    *United States v. Frank Butselaar*, S1 22 Cr. 560 (CS)

Dear Judge Seibel:

      The Government respectfully writes in response to the defendant's letter, dated October 9, 2024, raising three purported concerns relating to his upcoming trial. The concerns identified by the defendant are divorced from fact and law, at odds with foundational principles of criminal justice, and lack any merit whatsoever.

      *First*, citing the Government's proposed requests to charge, the defendant claims this case involves "complex issues of United States tax law" and suggests that "a jury of twelve lay people" cannot apply these principles to facts established at trial. (Def. Sub. 1-2.) This complaint is a frontal assault on the jury system and, if accepted, would bar criminal prosecution of a wide array of conduct, including many fraud, tax, and money laundering offenses. These cases, of course, are a staple of the federal system—and this District. *See, e.g., United States v. Daugerdas*, 837 F.3d 212, 218 (2d Cir. 2016) (affirming conviction of defendant who "developed, sold, and implemented a variety of tax-reduction strategies for wealthy clients" which violated the "economic substance rule"); *United States v. Helmsley*, 941 F.2d 71, 77 (2d Cir. 1991) (affirming tax convictions based on scheme which relied on false "expenses" and "artificially inflated business expense deductions"); *United States v. Lemay*, No. 1:21-CR-573 (MKV), 2022 WL 17363595, at *1 (S.D.N.Y. Dec. 1, 2022) (describing charged tax evasion scheme involving the "use of sham companies" to "defraud the IRS of federal income and payroll taxes"); *United States v. Josephberg,* 18-cr-650 (RJS) (S.D.N.Y. March 11, 2019), Dkt. 45 (proposed consent jury instructions in a tax matter which would have instructed the jury on capital gains, carried interest, and partnership taxation); *United States v. Willner*, No. 07 CR. 183 (GEL), 2007 WL 2963711, at *1 (S.D.N.Y. Oct. 11, 2007) (describing tax fraud prosecution based on manipulation of "net operating loss" rules); *United States v. Atkins*, 661 F. Supp. 491, 493 (S.D.N.Y. 1987) (describing tax fraud prosecution based on "pre-arranged, rigged and fraudulent transactions in United States government and agency securities, to create false tax deductions based on fraudulent trading losses and interest expenses that were passed on to the limited partners").

The premise of the defendant's assertion that this case involves matters that are too "complex" for a jury to understand, moreover, is fundamentally wrong. While the defendant attempted to dress up his tax structure in the garb of complexity, using foreign entities and trusts, the charged scheme is quite simple. Understanding that U.S. residents are subject to tax on their worldwide income, the defendant knowingly, willfully, and illegally, devised a scheme which hid income on behalf of taxpayers in the name of nominee owners or beneficiaries during periods that taxpayers became U.S. tax residents. This scheme was illegal because, as a matter of substance over form, the money continued to belong to the taxpayers. Even respecting the purported transfers of ownership rights orchestrated by the defendant, the money continued to be taxable to his clients under the Internal Revenue Code's Grantor Trust and Controlled Foreign Corporation rules, and the defendant was told as much—repeatedly. This makes it no different than what Courts—from the Supreme Court on down—has labeled standard fare for criminal tax cases. *Spies v. United States*, 317 U.S. 492, 499 (1943) (noting that the "concealment of assets or covering up sources of income" would allow inference of a "willful attempt to defeat or evade" taxes); *United States v. Boisseau*, 841 F.3d 1122, 1126 (10th Cir. 2016) ("The use of a nominee owner of one's business is a common affirmative act supporting a conviction for tax evasion."); *United States v. Bussell*, 504 F.3d 956, 963 (9th Cir. 2007) (upholding tax conviction where defendant "create[d] a number of corporations in the name of nominee owners for the purposes of rerouting the profits from her medical practice, thereby giving the appearance that she owned less assets and earned less income, and moving various real estate holdings and disability payments to other corporations and an off-shore bank account in the name of nominee owners"); *United States v. Klausner*, 80 F.3d 55, 62 (2d Cir. 1996) ("An affirmative act includes 'any conduct, the likely effect of which would be to mislead or to conceal.'" (quoting *Spies*, 317 U.S. at 499)). The conduct at issue in this case, *i.e.*, the use of nominees to conceal income taxable under multiple provisions of the Internal Revenue Code, is no different and fits squarely within the heartland of these tax evasions cases.

There is overwhelming evidence that the defendant well knew that his structure was a vehicle for tax evasion. The defendant's particular complaints about the supposed complexity of the tax rules in this case ring particularly hollow as the Government expects its evidence at trial will show, among other things, that the defendant was sent a highlighted copy of relevant regulations and specifically told by an attorney—who he sought out for a favorable opinion—at his former law firm that the structure he created was taxable. These regulations stand among multiple other rules and principles cited to the defendant by tax professionals demonstrating that his structure, and the methods he undertook to conceal income from the IRS, were not effective to avoid U.S. taxation. The defendant cannot seriously be heard to complain that the jury will be instructed on the applicability of these principles in assessing taxability.

The defendant's present complaints about the level of detail in the Government's requests to charge are particularly surprising given that the defendant himself, just a few weeks ago, indicated that he intended to propose substantive jury instructions as to the very concepts he now claims are too complicated for the jury. The defendant told the Court that he needed an extension because the superseding indictment "identified 20 sections of the Internal Revenue Code (IRC) governing the reporting requirements for Subpart F and 'grantor trust' income," and he represented that the defense, like the Government, "intend[ed] to submit instructions as to the applicable tax

law principles set forth in the Superseding Indictment." Dkt. 49 at 1. Notwithstanding this representation, the defendant submitted requests to charge on the extended deadline without even mentioning the concepts of grantor trusts, Subpart F income, or substance over form—the very principles underlying the core theory in this case.

Indeed, apart from generically complaining that "the Government's proposed methodology is … unworkable," the defendant says little of substance in his letter. He contends that the jury's lack of tax expertise is somehow "compounded" under "the Government's proposed protocol" because the jury instructions would only come "*after* the jury had heard fact-based testimony." (Def. Sub. at 2.) This protocol, however, does not belong to the Government. It is the practice that has been routinely followed by criminal cases all across the country for hundreds of years. There is nothing wrong with the jury hearing fact testimony and then being instructed on the law— this practice is the rule, not the exception. *See United States v. Gaudin*, 515 U.S. 506, 514 (1995) (describing "the jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence").

*Second*, citing nothing whatsoever—not a single case, statute, regulation, treatise, or jury charge—the defendant summarily asserts that his criminal liability on counts two through six, each of which involve aiding the preparation of false tax returns, "is wholly derivative of any criminal liability for one or more co-conspirators who hold a legal duty." (Def. Sub. at 3.) The defendant badly misapprehends the law.

Aiding or assisting in the preparation of a false tax return is entirely separate and distinct from the charge of conspiracy. There is no requirement, under the statute, for a taxpayer or tax filer to have fraudulent intent. To the contrary, on its face, the statute punishes those who "counsel[]" or "advise[]" the preparation of false returns "whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return." 26 U.S.C. § 7206(2). And courts within this Circuit have repeatedly rejected the notion—advanced by the defendant—that liability under Section 7206(2) is akin to aiding and abetting liability that requires an underlying violation to have been committed by someone else:

> Congress did not intend to exempt anyone from punishment who actively endeavors to defeat a tax, whatever his relationship to the taxpayer might be. As Judge Learned Hand pointed out in *United States v. Kelly*, 105 F.2d 912, 917 (2d Cir. 1939), the purpose of these statutes was to reach the advisers of taxpayers who got up their returns, and who might wish to keep down the taxes because of the credit they would get with their principals, who might be altogether innocent. In other words, a person who violates section 7206(2) as an adviser is not merely an aider and abettor, as that term commonly is understood. If he attempts to accomplish the evasion of a tax payment, he becomes as much a principal as the taxpayer who owes the tax. In fact, the guilt or innocence of the taxpayer for whom the return was filed is irrelevant to the question of the adviser's guilt.

*United States v. Rowlee*, 899 F.2d 1275, 1278–79 (2d Cir. 1990) (cleaned up). Indeed, after receiving a draft of the defendant's letter, the Government pointed the defendant to *United States*

*v. Little*, where the Second Circuit affirmed a defendant's conviction for, among other things, violations of Section 7206(2) for steering undeclared money of third parties into an offshore trust and then providing false information that was subsequently used to file tax returns. *See* 828 F. App'x 34, 38–39 (2d Cir. 2021) (describing how the defendant "willfully mislead[] the Seggerman family's accountants when he informed them that the transfers from Lixam Proviso were merely gifts … and not distributions" (cleaned up)).

The confusion the defendant seeks to inject regarding the scope and applicability of Section 7206(2) appears to be based on a self-serving—and completely erroneous—interpretation of the willfulness standard in the context of the tax laws. Ordinarily, in other contexts, willfulness is read to require a bad purpose to disobey or disregard the law. In *Cheek v. United States*, 498 U.S. 192 (1991), the Supreme Court imposed a heightened standard, which is commonly interpreted to require that the defendant acted in violation of a known legal duty. That standard does not, as the defendant here claims, somehow suggest that a tax violation must be derivative of a violation by someone obligated to file taxes or making direct representations to the IRS. Instead, it simply requires that the defendant *know* what the Code requires and set out to foil the system. *See United States v. Aracri*, 968 F.2d 1512, 1523 (2d Cir. 1992) ("The relevant inquiry … is 'whether the Government presented any evidence from which the jury could infer that defendants knew their scheme would result in the filing of false tax returns, and deliberately proceeded with their scheme in the face of that knowledge." (internal alternations omitted)); *United States v. MacKenzie*, 777 F.2d 811, 820 (2d Cir. 1985) ("While appellants had nothing to do with the preparation of the tax returns of the employees in question, they knew the returns would be fraudulently filed and relied on that fact to conceal their ongoing fraud."). Indeed, as noted, the plain text of Section 7206(2) expressly contemplates that the statute may be violated "whether or not" the person authorized or required to file a return is a participant in this fraud.

Notably, and consistent with these principles, the defendant does not suggest that he cannot be charged with a violation of Section 7206(2) based on his role as a tax advisor (as opposed to a preparer or filer)—nor could he. *See Rowlee*, 899 F.2d at 1279 ("Of course, the application of section 7206(2) is not limited to tax preparers; it applies to all knowing participants in the fraud."). Rather, he attempts to argue that the Government should be required to disclose to him a list of co-conspirators in advance of trial. In any event, the Government has disclosed this list of co-conspirators and its preliminary witness list in advance of the Court's and this issue is thus moot.[1]

*Third*, at the end of his letter, the defendant complains that "the Government has produced more than 150 documents of Rule 16 discovery since September 27th, some of which appear to have been in its possession since 2022."[2] (Def. Sub. at 4.) The defendant's assertions are misleading, irrelevant, and surprising given the surrounding context.

---

[1] The Government has explained, in great detail, the basis for its concern regarding the disclosure and potential dissemination of these materials. *Cf. United States v. Shkreli*, 2016 WL 8711065, at *6 (E.D.N.Y. Dec. 16, 2016). Despite these concerns, without obligation, and only as a professional courtesy, the Government has made these disclosures.

[2] Though the defendant shared a draft of his letter with the Government prior to filing, he elected not to include this issue in that draft.

To start, the two documents that "appear to have been in [the Government's] possession since 2022," are neither Rule 16 nor § 3500 material. These two documents are work product prepared by counsel for others who were under investigation in this case, and merely contain those attorneys' analyses of the Rule 16 materials already in the defendant's possession. While the Government had no obligation to produce those summaries, it elected to do so as a professional courtesy and to aid in their preparations for trial.

Next, many of the other documents the Government produced to the defendant are merely re-productions of tax filings that were previously produced. The Government simply produced the official copies being certified by the IRS for use at the trial.

As to the other documents that have been produced over the last few weeks, which are minimal, the Government is, of course, permitted to continue to investigate its case. And as in almost all trials, small amounts of additional discovery have come into the Government's possession following witness interviews. But in each case, the Government has promptly produced that discovery material to the defendant.

Finally, the defendant's complaint about discovery in this case is also quite surprising and were not shared with the Government in the defendant's draft letter. The Government has gone above and beyond all applicable disclosure obligations. To name but a few examples, the Government has:

- Voluntarily produced to the defendant highly detailed § 3500 material, alongside initial discovery productions, and made a voluminous production of § 3500 five months in advance of trial and is continuously supplementing those materials on a rolling basis.

- Engaged in three separate reverse proffers of the defense camp nearly a year before trial, including one involving the defendant himself.

- Filed incredibly detailed motions *in limine*, laying out its theory of the case and citing and attaching dozens of relevant documents which provide a preview to the defense as to the Government's exhibits.

- Made clear to defense counsel through discussions, filings, and early § 3500 productions the identities of numerous (but not all) witnesses the Government intends to call at trial.

- Disclosure of the entirety of its preliminary witness list prior to the Court's deadline.

- Disclosure of a list of co-conspirators which the Government intends to argue at trial despite being under no obligation to do so.

- Has produced, and is continuing to produce on a rolling basis, English-translations of Dutch-language documents that are being prepared by translators. The Dutch-language documents which are translated are identified for counsel well in advance

of the receipt and production of the translation as well to preserve the defense's translation budget.

The Government has complied with all discovery and disclosure obligations and will continue to do so in advance of trial. And it has extended professional courtesies as a matter of course to this point as well. The defendant's complaints ring hollow.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

by:     /s/
Benjamin Klein
Shiva H. Logarajah
David A. Markewitz
Assistant United States Attorneys
Southern District of New York
(914) 993-1900

cc:     Kerry Lawrence, Esq. (by ECF)
Diane Fischer, Esq. (by ECF)
Samidh Guha, Esq. (by ECF)