

*U.S. Department of Justice*

*United States Attorney
Southern District of New York*

*50 Main Street, Suite 1100
White Plains, New York 10606*

November 3, 2024

**BY ECF & EMAIL**
The Honorable Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    *United States v. Frank Butselaar*, No. 22 Cr. 560 (CS)

Dear Judge Seibel:

      The Government respectfully writes in opposition to the defendant Frank Butselaar's request for the Court to reconsider its denial of Butselaar's pre-trial bail motion. Butselaar is a Dutch citizen who opposed extradition and has no ties to this jurisdiction. He was detained as a serious flight risk. Now, with trial beginning tomorrow, he has enormous incentive to flee to evade responsibility for his crimes. In the face of those significant concerns, Butselaar identifies no reason favoring release beyond the inconveniences that accompany every trial of a detained defendant. Butselaar's request for bail should be denied.

**I.    Relevant Facts**

      Butselaar was arrested in Perugia, Italy at his second home pursuant to a provisional arrest request by the Government on March 14, 2023. After his arrest, he contested extradition from Italy to the United States in the Perugia Court of Appeal, forcing Italian prosecutors to hold a lengthy hearing on the Government's allegations.

      On or about July 11, 2023, the Perugia Court of Appeal rejected Butselaar's arguments and issued a favorable decision on the Government's extradition request. On or about October 2, 2023, three months later, the defendant arrived in the Southern District of New York and was detained on consent without prejudice to a future bail application.

      On or about October 28, 2024—on the eve of trial— Butselaar filed a motion for temporary release to a hotel in White Plains during trial. The Court denied that motion on October 29, 2024, noting that Butselaar's "proposal does not include any security for Mr. Butselaar's appearance." Dkt. No. 75. The defendant filed a motion to reconsider bail on or about October 31, 2024, which similarly lacked any proposal to secure Mr. Butselaar's appearance.

## II. Applicable Law

### A. The Bail Reform Act

Under the Bail Reform Act, in a case that involves a defendant who is a serious risk of flight, detention is necessary where "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. §§ 3142(e)(1), (f)(2)(A). Although detention based on dangerousness requires the Government to establish the risk of danger by clear and convincing evidence, detention based on flight requires a "lesser" showing—the Government need demonstrate only that the defendant would present a risk of flight by "a preponderance of the evidence." *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011) (cleaned up).

If a defendant is detained, "[a] judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i); *United States v. Gumora*, 454 F. Supp. 3d 280, 286-87 (S.D.N.Y. 2020). But in assessing whether temporary release is warranted, the Court must continue to balance the reasons for release against the risks that initially resulted in the defendant being detained. *Gumora*, 4545 F. Supp. 3d at 287-88.

### B. Sixth Amendment

The Sixth Amendment protects a criminal defendant's right to the effective assistance of counsel, U.S. CONST., amend. VI, and "guarantees a criminal defendant is provided with 'a meaningful opportunity to present a complete defense,'" *United States v. Crandall*, 748 F.3d 476, 481 (2d Cir. 2014) (quoting *Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006)). "Yet the Sixth Amendment does not create an absolute right to the elimination of all difficulties or impairments that may hinder a criminal defendant's capacity to perfectly comprehend, and participate in, court proceedings," and while "[p]erfect participation by a criminal defendant is optimal, . . . perfection is not required by the Sixth Amendment." *Id*. Indeed, the Second Circuit has recognized that, "[a]lthough pretrial detention . . . undoubtedly makes communication with counsel and preparation for trial more cumbersome, without more, those consequences do not result in an interference of constitutional significance." *United States v. Dettelis*, 372 F. App'x 105, 106 (2d Cir. 2010).

## III. Argument

### A. Butselaar is a Serious Flight Risk

Butselaar is a serious flight risk, and no condition or combination of conditions of release can adequately assure his presence at this week's trial.

To start, Butselaar is a foreign national and has no ties to this country beyond this prosecution. As far as the Government is aware, he has no family here; no home here; and no financial accounts here. And while Butselaar now asserts that he can be trusted to appear at his trial because he "is determined to . . . defend himself against the Government's public allegations" (Def. 10/28 Ltr. at 1), his prior behavior suggests otherwise. After he was indicted, Butselaar

fought extradition and made clear that his primary concern was remaining out of the Government's custody. These circumstances make clear that Butselaar is a serious flight risk. *See United States v. Zarrab*, 2016 WL 3681423, at *8 (S.D.N.Y. June 16, 2016) (noting that the most persuasive facts favoring detention were, among others, the "Defendant's lack of ties to the United States; . . . his extensive international travel; and his strong ties to foreign countries").

The nature of the offenses and the weight of the evidence similarly favor continued detention. As the Government laid out in its motions *in limine* filing, Butselaar spent nearly a decade orchestrating a sophisticated scheme to hide tens of millions of dollars from the IRS. He originated the tax structures in question, and he persisted in pushing these structures, despite being told repeatedly that they were illegal. He also lied over and over again to continue perpetrating his fraud. Given his significant disregard for the law, there is substantial reason to believe that he would not abide by a Court order to appear.

A conviction at trial is likely. Should that happen, Butselaar will face a potential sentence of up to two decades in prison, and a Guidelines range of around ten years' imprisonment. That supplies enormous incentive to flee. And given Butselaar's level of sophistication and his pattern of lying to authorities and fraudulent behavior, he is a serious risk to do so. That concern is further amplified now that trial begins tomorrow. *See United States v. Montrond*, No. 09-10278-NMG, 2011 WL 1560932, at *3 (D. Mass. Apr. 25, 2011) ("[T]he concern that Montrond will flee grows stronger as the trial date nears.").

Butselaar offers no serious bail package to mitigate those concerns.

To start, Butselaar offers to live in a hotel under electronic monitoring. But as the Second Circuit has recognized, "electronic monitoring" largely operates on the "word" of the defendant that he will comply with the terms of release. *United States v. Millan*, 4 F.3d 1038, 1049 (2d Cir. 1993) (cleaned up). "[E]lectronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology, and . . . monitoring equipment can be rendered inoperative." *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993) (cleaned up). As one court noted, "electronic monitoring does not prevent flight; at best, it limits a fleeing defendant's head start." *United States v. Maxwell*, 510 F. Supp. 3d 165, 177 (S.D.N.Y. 2020) (cleaned up).

Next, Butselaar notes that he would "agree to sign a written waiver of extradition." (Def. 10/31 Ltr. at 2.) But it is far from clear whether foreign countries would respect such a written waiver—a fact that numerous courts in this district have acknowledged.[1] *See, e.g.*, *United States v. Maxwell*, 510 F. Supp. 3d at 173-74 (collecting cases); *United States v. Epstein*, 425 F. Supp. 3d 306, 325 (S.D.N.Y. 2019) (describing the "Defense proposal to give advance consent to extradition and waiver of extradition rights" as "an empty gesture").

Lastly, Butselaar offers to sign a bond. Since Butselaar himself does not appear to have any financial accounts in this country, financially responsible co-signers are critical if this bond is

---

[1] While defense counsel may be in possession of Butselaar's passport, the Government cannot prevent Butselaar from seeking to secure another passport from a foreign country.

to have any sort of suasion over Butselaar. But Butselaar admits that he does not currently have any such co-signers to offer to the Court. Defense counsel, of course, assert that they "would endeavor to get two financially responsible individuals." (Def. 10/31 Ltr. at 2.) But it is clear from that representation that they do not currently know if such sureties will be found. And even if they are, defense counsel acknowledges that they will be "individuals living abroad" (*id.*), raising questions about the Government's ability to enforce the bond should Butselaar flee.

### B. No Compelling Reasons Call for Temporary Release

In the face of the need to detain Butselaar pending trial, he offers no compelling or overriding reasons for his temporary release.

*First*, Butselaar suggests that temporarily releasing him for trial "would alleviate the pressure on the [U.S. Marshal Service] from having to transport Mr. Butselaar to and from the Westchester facilities for trial each day and provide for his meals based on the trial schedule." (Def. 10/28 Ltr. at 2.) But, of course, every defendant detained during trial must be transported to and from the courthouse by the U.S. Marshal Service. Nothing about that fact is unique or calls for temporary release. Indeed, the Marshals are fully equipped to transport the defendant to Court.

*Second*, Butselaar argues that temporary release would "eliminate the problem of avoiding disclosure of Mr. Butselaar's detention to the jury" as he "would be able to dress prior to each court day and take comfort breaks during the trial day without the Marshals['] involvement." (Def. 10/28 Ltr. at 2.) Again, that "problem" exists in the case of every detained defendant and does not favor release. And, in any event, Butselaar's concerns are unfounded. Even detained, he will be permitted to change into a suit in advance of court, and any comfort breaks would occur in the U.S. Marshal Service's area and not in the public portions of the courthouse, as is standard.

*Third*, Butselaar suggests his temporary release will allow the trial to move more quickly. (Def. 10/28 Ltr. at 2.) But any efficiencies gained by releasing Butselaar would be minimal at best. And in light of the substantial risk of flight present here, they do not call for release.

*Finally*, Butselaar asserts that release "would obviously greatly ease the burden on Mr. Butselaar and his legal team in terms of being fairly prepared for trial." (Def. 10/28 Ltr. at 2.) But whether styled as an argument under § 3142(i) or the Sixth Amendment, it is not a sufficient reason to release Butselaar.

Undoubtedly, it is less convenient for Butselaar and his lawyers to prepare for trial while he is incarcerated. But that is true in all cases involving a detained defendant and is not, standing alone, grounds for pre-trial release, as this Court recognized in denying his bail application. *See* Order, Dkt. 75 ("I recognize that it would be easier for everyone if Mr. Butselaar were not in custody, but that is not the standard."); *see also Dettelis*, 372 F. App'x at 106 ("Although pretrial detention . . . undoubtedly makes communication with counsel and preparation for trial more cumbersome, without more, those consequences do not result in an interference of constitutional significance."); *Crandall*, 748 F.3d at 481 ("[T]he Sixth Amendment does not create an absolute right to the elimination of all difficulties or impairments that may hinder a criminal defendant's capacity to perfectly comprehend, and participate in, court proceedings."); *United States v. Schulte*,

No. 17 Cr. 548 (PAC), 2021 WL 4784306, at *3 (S.D.N.Y. Oct. 12, 2021) (impositions on *pro se* defendant's trial preparation are "not a backdoor out of the SAMs").

Here, Butselaar provides no explanation for why his defense is uniquely or materially impaired by his continued detention beyond the magnitude of discovery in this case, which he has had for months.[2] (Def. 10/28 Ltr. at 2.) But the Government has already worked with Butselaar to address that very issue. Following a request from Butselaar's lawyers, the Government immediately helped facilitate Butselaar's receipt of an air-gapped laptop to help him review discovery more efficiently.

It also bears noting that Butselaar has not previously sought any incremental accommodations short of pre-trial release to address these issues—and, in fact, Butselaar did not even raise the prospect of his release with the Government until Sunday, October 27, 2024, just eight days before the start of trial. Had Butselaar reported any issues relating to discovery or access to his counsel, the Government would have been willing to work with him and his lawyers to try to ensure that he had additional time each day to meet with the defense team, including having Butselaar produced to the courthouse to see his lawyers. But Butselaar has not even asked for any of those options. This delay in bringing the concern to the Government's and the Court's attention "undercuts any argument that [Butselaar's] continued detention would cause any significant" hardship towards his defense. *Cf. Montrond*, 2011 WL 1560932, at *3.

The Court should therefore deny Butselaar's request and continue his detention.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

by:      /s/                 
Benjamin Klein
Shiva H. Logarajah
David A. Markewitz
Assistant United States Attorneys
Southern District of New York
(914) 993-1900

cc: Kerry Lawrence, Esq. (by ECF)
Diane Fischer, Esq. (by ECF)
Samidh Guha, Esq. (by ECF)

---

[2] Butselaar's review of discovery has also been aided by the multiple reverse proffers that the Government has provided to the defense camp, as well as the Government's decision to produce § 3500 material nearly six months in advance of trial.