

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*United States Attorney's Office*
*50 Main Street, Suite 1100*
*White Plains, New York 10606*

March 3, 2025

**BY ECF AND EMAIL**
The Honorable Cathy Seibel
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re:  *United States v. Frank Butselaar*, S1 22 Cr. 560 (CS)

Dear Judge Seibel:

Pursuant to the Court's order, the parties jointly write to set forth their positions on restitution in the captioned matter. The parties have been unable to reach agreement on either the Court's authority to order restitution or the proper restitution amount. The Government's position is that the Court is permitted, by the express terms of the plea agreement, to order restitution, that the defendant stipulated in the plea agreement to a minimum loss amount of $25 million, that the defendant is not entitled to a hearing on this matter, and that the Court should, for the reasons below, order restitution in the amount of $15,532,915. The defendant's position, discussed more fully below, is that the plea agreement contained no stipulation as to the specific amount of restitution, a restitution order is discretionary and not warranted under the considerations of 18 U.S.C. § 3663, and, if the Court were to exercise its discretion and order restitution for the count of conviction or any relevant conduct, that the amount should be independently determined by the IRS for each respective tax year per the terms of the plea agreement. The defendant therefore requests that the Court order a hearing.

**The Government's Position**

The Court should order restitution in the amount of $15,532,915 without a hearing.

When the Government agreed to extend a mid-trial plea to Butselaar, it bargained for, among other things: (i) certainty; and (ii) a final resolution of this matter without further litigation or expense to the Government. As it relates to restitution in particular, the Government sought certainty as to a minimum restitution figure, and the ability to obtain restitution without the burden of additional proceedings. To that end, the Government specifically bargained for the following provisions in the plea agreement:

- Butselaar expressly promised "to make restitution" for the tax loss he caused in an amount "determined by the Internal Revenue Service," without reserving any right to challenge that figure, *see* Plea Agmt. at 2; and

- Butselaar agreed, subject to the Court's factual findings at sentencing, that the tax loss was *at least* $25 million, *see* Plea Agmt. at 2–3.

Together, those provisions supplied the Government with certainty that it would secure restitution for a tax loss of at least $25 million, and that Butselaar would not have a right to challenge the restitution amount the Government put forward (subject, perhaps, to a good faith requirement).

As explained in the Government's sentencing submission, in connection with Butselaar's trial, an IRS revenue agent calculated the tax loss caused by Butselaar to be $28,717,930. This calculation was produced to the defense and supported by detailed financial statements. *See* Gov't Sent. Sub. Ex. E; 3538-75; 3538-80. After crediting Butselaar for the $9,467,085 that his client-taxpayer, Tijs Verwest, already voluntarily repaid, the outstanding tax loss resulting from his scheme is $19,250,845. At sentencing, this Court remarked that this appears to be a good faith estimate of loss. Sent. Tr. at 36:8–9. Given that the plea agreement obligates Butselaar to pay restitution for the tax loss in an amount "determined by the Internal Revenue Service," the Court could reasonably on the record already before it order Butselaar to pay restitution in that amount.

Nonetheless, the Government respectfully requests that the Court enter, without a hearing, a restitution order in the lesser amount of $15,532,915, which represents the *minimum* outstanding tax loss stipulated to in the plea agreement. In particular, as noted, the parties stipulated in the plea agreement that if this Court found at sentencing that Butselaar "willfully aided, assisted, procured, counseled, or advised the filing of false tax returns for Verwest for the tax years 2012 through 2017, the tax loss is more than $25,000,000." Plea Agmt. at 3. This Court indisputably made this finding at sentencing. *See* Tr.17:12-17 ("And as a factual matter, I find, essentially for the reasons summarized by the Government in its sentencing memo and as it summarized today, based on what I saw at the trial, that the Defendant in fact willfully aided, assisted, procured, counseled, and advised the filing of false tax returns for Tiesto/Verwest for 2012 through 2017."). Giving Butselaar full credit for the amount voluntarily paid by Verwest, leaves a remaining minimum tax loss of $15,532,915, which is the amount that the Government seeks in restitution.[1]

To be sure, the Government continues to believe that, if a hearing were held, a $19,250,845 figure would be appropriate. But if the Government were required to proceed with a hearing to secure a restitution order, that would vitiate certain of the core benefits of the Government's bargain: certainty and a resolution of this matter without further burden or expense. Indeed, there is no credible basis for Butselaar to contest the restitution figure sought by the Government. The plea agreement unambiguously states that, given the findings already made by the Court, the loss amount is at least $25 million. And the Court itself found at sentencing that Butselaar caused at least "$25 million in actual tax loss." Sent Tr. at 57:12–13. Butselaar cannot seek an evidentiary hearing to re-litigate his own stipulation and this Court's express finding. Accordingly, given the

---

[1] To the extent that the Court orders a hearing, the Government reserves the right to seek restitution for the entire amount of tax loss which, again, is $19,250,845.

state of the record, and given the Court's finding at sentencing, the Court should award the Government a restitution figure based on the minimum outstanding tax loss: $15,532,915.[2]

Butselaar's efforts to escape his restitution obligations are unpersuasive, unsupported by law, and contrary to the plea agreement that both he and his lawyers signed.

*First*, Butselaar has suggested that restitution cannot be awarded because the tax loss he caused does not come from his own tax obligations, but the obligations of his clients. Sent. Tr. at 28:2–4. That position is directly contrary to the plea agreement, which provides that Butselaar will pay restitution for the tax loss arising from the filings of Verwest and van de Wall. *See* Plea Agmt. at 2 ("The defendant further agrees to make restitution for the amount of additional tax that would have been due and owing were van de Wall to have filed an amended tax return … and, should the Court make the finding set forth in Section A.2.a.ii of this agreement, to make restitution for the amount of additional tax that would have been or is due [and] owing based on any amended tax return … that could have been filed by Verwest for tax years 2012 through 2017…."). Indeed, Butselaar specifically waived any right to appeal a restitution order up to $25 million, *see* Plea Agmt. at 5, further demonstrating that the parties understood, in entering into the plea agreement, that the Court could and would be ordering restitution.

Butselaar's contention that he cannot be held responsible for the tax loss he caused is also entirely without legal support. Consistent with the Court's initial skepticism of the defense's argument, Sent. Tr. 28:20–29:11, 38:11–16, the Government has been unable to find any authority adopting this position. And that's not surprising. After all, "the purpose of restitution is essentially compensatory: to restore a victim, to the extent money can do so, to the position [the victim] occupied before sustaining injury." *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006). Here, the victim is the IRS, and the position the IRS would have occupied but for the injury caused by Butselaar was the collection of all taxes due and owing from Butselaar's client-taxpayers (*i.e.*, van de Wall and Verwest). Nothing about that fact turns on whether the underlying tax obligation belonged to Butselaar—especially where, as in this case, the client-taxpayers are not alleged to have participated in the illegal scheme. Simply put, what matters is that the IRS suffered a loss and that it was Butselaar who caused the loss, not whose tax filing the loss flows from. *See United States v. Gushlak*, 728 F.3d 184, 195 (2d Cir. 2013) ("An order of restitution . . . is to be based upon the loss directly and proximately caused by the defendant's offense conduct." (cleaned up)).

Consistent with that common-sense conclusion, there are various examples from just the last few years of courts—including this Court—imposing restitution on tax preparers and advisors for losses that they caused via their clients. For example, in *United States v. Gentle*, this Court

---

[2] That is particularly true given the practicalities of the current case. As the Second Circuit has explained, certainty and precision are not necessary in setting a restitution figure, and the Court is merely required to arrive at a "reasonable" estimate of the loss amount given the available information. *See United States v. Granik*, 386 F.3d 404, 414 n.7 (2d Cir. 2004). Here, given Butselaar's current financial position, and the fact that he will not be designated to a facility until this process is complete, it is far more practical and efficient for the Court to resolve the restitution dispute now, based on the stipulated-to loss figure of $25 million, rather than holding a hearing to determine whether it is possible to come up with a higher and more precise figure.

ordered a tax preparer convicted of filing false returns for clients to pay restitution of $59,488 based on the loss arising from improper deductions taken on those clients' returns. Amended Judgment, No. 16 Cr. 238 (CS) (S.D.N.Y.), ECF No. 38. More recently, in *United States v. Neal*, a court ordered a tax preparer who pled guilty to filing fraudulent returns to pay nearly $2 million in restitution to the IRS for the losses she caused in connection with filings she submitted on behalf of her clients. *See* Judgment at 6, 23 Cr. 136 (DMB) (D. Miss. Jan. 30, 2025), ECF No. 63. Similarly, in *United States v. Worthy*, a court ordered a defendant convicted of defrauding the United States through the operation of her tax business to pay more than $189,000 in restitution tied to the tax loss arising from the false and fraudulent returns prepared for her client-taxpayers. *See* Judgment at 6, 21 Cr. 64 (PWG) (D. Md. Sept. 23, 2021), ECF No. 30. So too here. Butselaar agreed in the plea agreement to pay restitution for the losses arising from the omitted income in Verwest's and van de Wall's tax filings, and he cannot now escape his restitution obligations after getting the benefit of his plea. *See Granik*, 386 F.3d at 411–13 (explaining that enforcing plea bargains is necessary to incentivize the Government to strike them in the first place).

*Second*, Butselaar's claim that there has been no "determin[ation] by the Internal Revenue Service" as to his restitution obligation is utterly without merit, and, given the restitution figure sought by the Government, beside the point. *See* Plea Agmt. at 2. Butselaar's argument seems to be premised on the idea that, before restitution can be ordered, the IRS must make some sort of civil tax loss finding. But, of course, the plea agreement contains no such requirement. And, in any event, the IRS *has* made a determination as to tax loss in this case: an IRS revenue agent calculated a good faith tax loss of $28,717,930. *See* Sent. Tr. at 26:6–9, 31:21–32:6. In any event, given that the Government is now seeking restitution of only the bare minimum amount of tax loss stipulated to by the parties' stipulated in the plea agreement (*i.e.*, $25 million with full credit for the payment by Verwest), Butselaar cannot reasonably claim that this amount is in dispute.

*Third*, and relatedly, defense counsel has summarily informed the Government that the defense "disagree[s] that there was a factual stipulation as to the amount of the restitution in the plea agreement." As explained above, however, this position is indefensible. The plea agreement could not have been clearer. To the extent the Court made certain factual findings at sentencing—which were clearly made—the parties stipulated that the tax loss figure was *at least* $25 million:

> The defendant further agrees[,] . . . should the Court make the finding set forth in Section A.2.a.ii of this agreement, to make restitution for the amount of additional tax that would have been or is due [and] owing based on any amended tax return filed by Tijs Verwest p/k/a "Tiesto" or that could have been filed by Verwest for tax years 2012 through 2017, including unreported overseas income, as determined by the Internal Revenue Service . . . .
>
> . . . .
>
> [Section A.2.a.ii:] The parties further agree that, should the Court find that the defendant willfully aided, assisted, procured, counseled, or advised the filing of false tax returns for Verwest for the tax years 2012 through 2017, the tax loss is more than $25,000,000 . . . .

Plea Agmt. at 2–3.

At sentencing, consistent with the plea agreement, the Court expressly found that "the Defendant in fact willfully aided, assisted, procured, counseled, and advised the filing of false tax returns for Tiesto/Verwest for 2012 through 2017." Sent. Tr. at 17:12–17. And as a direct result, there can be no serious dispute that the tax loss arising from Butselaar's scheme is at least $25 million. This stipulation is binding on Butselaar and more than a sufficient basis for the restitution order that the Government now seeks. *See Granik*, 386 F.3d at 412–13 (explaining that "[i]f defendants are not held to their factual stipulations, . . . the government has no reason to make concessions in exchange for them"). Indeed, it is well settled that "a factual stipulation in a plea agreement is a valid basis for a factual finding relevant to sentencing." *Granik*, 386 F.3d at 411–13. And that is undoubtedly true in the context of selecting a restitution amount. *See United States v. Bilal*, 941 F. Supp. 2d 397, 404 (S.D.N.Y. 2013); *see also United States v. Germosen,* 139 F.3d 120, 130 (2d Cir. 1998) (describing that the "the quantity and quality of evidence the district court may rely upon to determine the amount of loss is the same [for] both" restitution and Guidelines purposes). Consistent with this stipulation, the Court itself already found at sentencing that Butselaar caused at least "$25 million in actual tax loss." Sent Tr. at 57:12–13. And that amount (less the sum already paid by Verwest) is precisely what the Government is seeking for restitution.

Given that the Government is seeking restitution for the minimum tax loss amount stipulated to by the parties in the plea agreement, there is no basis for further proceedings relating to this matter. The Court should hold Butselaar to his promises in the plea agreement, give the Government the benefit of its plea bargain, and order restitution of $15,532,915. A proposed order to that effect is attached as Exhibit A to this letter.

**Butselaar's Position**

The Court may order restitution for offenses under Title 26 of the United States Code pursuant to the Victim and Witness Protection Act of 1982 ("VWPA") only where, as here, the defendant agreed to pay restitution in a plea agreement. 18 U.S.C. § 3663(a)(3). The terms in Mr. Butselaar's Plea Agreement dated November 14, 2024 (the "Agreement") governing restitution, in their entirety, are contained in the following paragraph (the "Restitution Provision"):

> The defendant further agrees to make restitution for the amount of additional tax that would have been due and owing were van de Wall to have filed an amended tax return for tax year 2013 including the overseas income referred to in footnote 1 of this agreement and, should the Court make the finding set forth in Section A.2.a.ii of this agreement, to make restitution for the amount of additional tax that would have been or is due owing based on any amended tax return filed by Tijs Verwest p/k/a "Tiesto" or that could have been filed by Verwest for tax years 2012 through 2017, including unreported overseas income, as determined by the Internal Revenue Service ("IRS"), in accordance with 18 U.S.C. §§ 3663, 3663A, and 3664, including, but not limited to, 18 U.S.C. §§ 3663(a)(3) and 3663A(a)(3). The restitution amount shall be paid according to a plan established by the Court. The defendant will be given credit against this restitution

> amount for any payments made prior to sentencing, as verified by the Office. The defendant agrees that restitution as set forth above shall be ordered as an independent part of the sentence, see 18 U.S.C. § 3663(a)(3), and, in addition, that the obligation to make restitution shall be made a condition of probation, see 18 U.S.C. § 3563(b)(2), or of supervised release, see 18 U.S.C. § 3583(d), as the case may be. If the Court orders the defendant to pay restitution to the IRS, either directly as part of the sentence or as a condition of supervised release or probation, the IRS may use the restitution order as a basis for a civil assessment. See 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

An order of restitution pursuant to the VWPA is discretionary. *See* 18 U.S.C. § 3663(a)(3) ("The court *may* also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement.")(emphasis supplied). For the following reasons, the Court should hold a hearing to determine whether, pursuant to the VWPA, restitution is warranted in this case and, if so, to determine the appropriate amount.

1. **The Court must consider certain relevant factors set forth in the VWPA before imposing a restitution order on Mr. Butselaar.**

The VWPA provides that, in addition to "the amount of the loss sustained by each victim as a result of the offense," the Court must also consider "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." § 3663(a)(1)(B)(i). The Court declined to impose a fine on Mr. Butselaar as part of his sentence expressly due to his inability to pay. Tr. 2/13/2025 at 30: 16-22; 35: 1-5. The basis for that finding is self-evident by Mr. Butselaar's qualification for CJA representation. As the Court is aware from the PSR, Mr. Butselaar's sole asset is a modest home in Italy that he and his wife are selling to repay a loan extended by a friend in connection with the defense of this case. It is unlikely that the proceeds of the sale will be sufficient for the repayment of the loan in its entirety. Mr. Butselaar's guilty plea and the publicity surrounding his prosecution and sentencing all but ensure he will be unable to work in the capacity of tax advisor again and, given his age, and his ability to earn has been severely compromised.

2. **There was no "meeting of the minds" as to the meaning of specific terms in the Restitution Provision.**

In addition, it has become apparent that the parties did not have a mutual understanding with respect to the Restitution Provision of the Agreement.

Irrespective of the parties' motivations for entering into the Agreement, the unusual circumstances and logistical background preceding the Agreement, which are not the subject of

meaningful dispute, is relevant here. On the morning of November 21, 2025, the trial was scheduled to resume at 9:30 a.m. Shortly after 8:30 a.m., the parties engaged in plea discussions, which accelerated quickly. The parties alerted the Court to this development, and Your Honor allowed for a brief delay of approximately 30 minutes before the commencement of trial proceedings to enable further settlement efforts while the jury remained assembled in the jury room.

In that narrow window, the parties reached an agreement that the government would offer a plea agreement, subject to which Mr. Butselaar would plead guilty to Count Two. We spoke with Mr. Butselaar in the courtroom holding facility to relay the proposed plea, and he agreed to the offer as to the count of conviction. The parties advised the Court of these developments and requested additional time to negotiate the final language of the Agreement, draft the document, have it reviewed by supervisors, and then gain Mr. Butselaar's final approval and execution of the agreement. The Court indicated that any plea hearing would need to occur during an extended lunch break that afternoon. The trial then resumed, with a member of each trial team present while the others from both sides focused on negotiating additional terms in the Agreement, including the Restitution Provision. During the lunch break, the parties conferred further, and the Agreement was finalized. The defense team then reviewed it with Mr. Butselaar in the holding room, and the Court allocuted Mr. Butselaar as to his change of plea with respect to Court Two of the indictment.

The attenuated timeframe and stressful circumstances are relevant because they explain why the parties did not actually have a meeting of the minds as to the Restitution Provision. As we understood, it, Mr. Butselaar agreed, if imposed by the Court, to pay restitution to the Internal Revenue Service (the "IRS") for: "the amount of additional tax that would have been due and owing were van de Wall to have filed an amended tax return for tax year 2013 including the overseas income . . . ." We understood that, in addition to restitution based on the sole count of conviction, "should the Court" determine that the substantive counts to which Mr. Butselaar did not plead guilty constituted relevant conduct, the Court may order restitution for the "amount of additional tax that would have been or is due [and] owing based on any amended tax return filed by . . . Verwest for tax years 2012 through 2017, including unreported overseas income." In both instances, we understood that the restitution amount would be based upon the IRS' determination of the outstanding tax liability for each respective count. At that point in the trial, the government had adduced no evidence, either through witness testimony or documents, as to any IRS determination of amounts actually or hypothetically due and owing. We therefore believed that, regardless of whether the restitution amount included a tax liability related to relevant conduct, it would require an independent IRS determination in such a manner that would have been undertaken in the preparation of an amended return.[3]

However, the government's sentencing submission offered nothing resembling an IRS determination, and it "supplemented" the record with only a single exhibit with no analysis and a reference to 3500 material. At the sentencing hearing, we informed the Court that we believed that there was a disagreement over the terms of the Restitution Provision. We further explained that it was not our belief that the Court would be able to impose a multi-million dollar restitution order against Mr. Butselaar for the tax obligations of van de Wall and Verwest absent a formal IRS determination, let alone based on the unsworn and unverified calculations limited to "Exhibit E"

---

[3] We anticipated that the government might utilize the three month interlude between the plea and sentencing to secure such an IRS determination.

of the government's sentencing submission. The Court then informed the parties that it would hold a hearing if there was a dispute about what the Restitution Provision meant or the amount unless there was an express waiver of a hearing in the Agreement. *See* Tr. 2/13/2025 at 30: 16-22; 35: 1-5.

"The need for precise language in § 3663(a)(3) cases is driven by the policy that plea agreements, like contracts, are instruments used to protect the rights and expectations of the parties." *United States v. Gottesman*, 122 F.3d 150, 152 (2d Cir. 1997)(internal quotations and citations omitted). As such, courts in this circuit employ contract law when reviewing the terms of plea agreements and construe them "strictly against the government" both as drafter and because of its "overwhelmingly superior bargaining position." *Id.* (collecting cases).

Here, the defense's belief that the amount of restitution would be determined by an independent restitution-based or analogous assessment by the IRS, not a revenue agent that had been part of the prosecution team, was patently reasonable. This is particularly so given that at the last pre-trial conference, the government acknowledged that Revenue Agent Valerie Catanzaro did no independent analysis of the tax liability:

> THE COURT: Is she going to do what revenue agents typically do, which is say, I'm not saying anything about the case, I'm just doing the arithmetic that the prosecutors asked me to do?
>
> MR. KLEIN: That's precisely correct, your Honor. She will not offer any opinion as to taxability. She will walk through the relevant forms so that the jury understands which forms apply. She will summarize financial statements *without making any independent assessment as to taxability*. She will explain to the jury how those funds would have been reported properly.
>
> . . .
>
> THE COURT: And is she -- she's not going to express an opinion about taxability, she's going to say, essentially -- or after I instruct the jury, the jury will understand that she's doing the math on what difference it would have made if the jury finds these things should have been reported.
>
> MR KLEIN: That's exactly correct, your Honor, and *we actually intend for her to play a more limited role, I think, than even is often the case with revenue agents. We don't intend to have her sit through the trial or really apply the evidence. It will be based on the financial statements*.
>
> THE COURT: And did she work on the case or did you just bring her in to testify?

>MR. KLEIN: I believe she may have attended a proffer session a couple of years ago. Other than that, I think she's had no involvement in this case.
>
>THE COURT: And to what extent is she using judgment about what to include or what not to include? Or is she just taking orders from you guys?
>
>MR. KLEIN: *She is taking orders from us*. She's making an assumption that the jury would conclude that this is a grantor trust and CFC, and then *she's plugging in the numbers* to show how they would flow through the relevant tax forms.

Tr. 10/21/24 at 105-06 (emphasis supplied).

At present, the trial record is devoid of sufficient information from which to correctly calculate restitution and, as the Court heard through several witnesses, the determination of what income sources were reportable under the Internal Revenue Code is a complex process. Given that the Agreement does not specify the amount of restitution,[4] and the parties dispute that RA Catanzaro's calculations are adequate or reflect the terms of the Restitution Provision, a hearing is warranted.

[*Remainder of page intentionally left blank*]

---

[4] In the Agreement the parties stipulated, solely for purposes of the Guidelines calculation, to a loss amount for the count of conviction and a loss amount that incorporated all substantive 7206(2) counts that was contingent on the Court's determination that it was relevant conduct. *See* Agreement at p. 3. That stipulation does not relate to and is not sufficient for purposes of determining restitution. As the Second Circuit has held, "a defendant's culpability will not always equal the victim's injury, an amount-of-loss calculation for purposes of sentencing does not always equal such a calculation for restitution." *United States v. Niebuhr*, 456 F. App'x 36, 39 (2d Cir. 2012) (internal citation and quotation omitted).

For the foregoing reasons, Mr. Butselaar respectfully submits that the Court should hold a hearing to determine what restitution, if any, is warranted under the VWPA and set a date for the parties' respective pre-hearing submissions.

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney for the
Southern District of New York

by: /s/_____
Benjamin Klein
Shiva Logarajah
David Markewitz
Assistant United States Attorneys

cc:   Counsel of Record (by ECF and Email)